DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**GUSTAV RENNY,**
Appellant,

v.

**ERIKAH BERTOLOTI,**
Appellee.

No. 4D17-2068

[ July 25, 2018 ]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Meenu Sasser, Judge; L.T. Case No. 502015CA014492XXXXMB.

Bryan J. Yarnell of Bryan J. Yarnell, PLLC, North Palm Beach, for appellant.

Alexandra Sierra-De Varona of De Varona Law, Boca Raton, for appellee.

TAYLOR, J.

Gustav Renny appeals two orders: (1) an order denying his motion to enforce a settlement agreement with Appellee Erikah Bertoloti that was reached pursuant to the offer of judgment statute; and (2) an order dismissing Bertoloti from the lawsuit pursuant to a separate settlement agreement between appellant and other parties to the lawsuit. For the reasons that follow, we reverse both orders.

In 2015, appellant sued Ilia Mogilevsky and a multitude of other defendants. Appellant later filed an Amended Complaint adding Appellee Erikah Bertoloti as a defendant in the lawsuit. Appellant eventually filed the operative Third Amended Complaint, which contains one count relevant to Bertoloti.

In the relevant count, appellant brought a claim against Mogilevsky and Bertoloti for violating 18 U.S.C. § 2510, et seq., by unlawfully intercepting appellant's oral communications. Specifically, appellant alleged that he and Mogilevsky shared an office, Mogilevsky employed Bertoloti as a

secretary, Mogilevsky influenced Bertoloti "to secretly record [appellant's] conversations," and both Bertoloti and Mogilevsky were liable for causing appellant's oral communications to be recorded without appellant's knowledge or consent.

On November 4, 2016, Bertoloti served a proposal for settlement on appellant in the amount of $13,350. The proposal required appellant to sign a general release and to execute a Notice of Voluntary Dismissal as to Bertoloti. The release also contained the following covenant: "[Appellant] hereby additionally covenants not to sue [Bertoloti] or to file any complaint of any kind whatsoever with any federal, state, or local governmental body, agency, or instrumentality arising out of or in any way relating to any of the Released Matters."

On November 29, 2016, before accepting Bertoloti's proposal for settlement, appellant and related parties (collectively the "Renny Parties") executed a Confidential Settlement Agreement ("CSA") with Mogilevsky and related parties (collectively the "Mogilevsky Parties") to resolve both the instant lawsuit and a separate lawsuit brought by the Mogilevsky Parties.

The CSA also identified certain Secondary Parties, i.e., an entity called LendingOne and its counsel, "who are not parties to this Settlement Agreement but are or may be impacted hereby." The Secondary Parties were parties to the separate Mogilevsky lawsuit.

Bertoloti was not a party to the CSA, nor was she a Secondary Party to the CSA. Notably, there were 55 parties identified in the CSA as Mogilevsky Parties, and Bertoloti was not among them.

Paragraph 3 of the CSA required appellant to dismiss all claims he had "against all parties in the lawsuits with prejudice" in the event the Mogilevsky Parties entered into a settlement with either of the Secondary Parties.

Paragraph 7 of the CSA provided that the parties "shall not disclose the existence of this Settlement Agreement to any other parties to the Renny or Mogilevsky Actions" until a final settlement with the Secondary Parties had been reached or a dismissal of the Renny and Mogilevsky actions had occurred.

Paragraph 8 of the CSA provided for a general mutual release between the Mogilevsky Parties and the Renny Parties and their respective employees and agents.

2

Paragraph 9 of the CSA required the parties to execute a Notice of Voluntary Dismissal in the lawsuits, which would be held in escrow until a final settlement agreement was reached between the Mogilevsky Parties and each of Secondary Parties, at which point it would be filed with the court.

Exhibit "B" to the CSA included a Notice of Voluntary Dismissal which required appellant to "voluntarily dismiss with prejudice any and all claims, cross-claims and counterclaims that have been or could have been brought in the above captioned actions."

On December 2, 2016, four days after signing the CSA, appellant accepted Bertoloti's proposal for settlement (the "Renny-Bertoloti settlement").

On January 12, 2017, appellant filed a motion to enforce settlement agreement and for entry of final judgment against Bertoloti. Appellant alleged that his acceptance of the proposal for settlement created a binding settlement agreement and that Bertoloti breached the agreement by failing to make any payment toward the settlement.

By January 13, 2017, the Mogilevsky Parties and the Secondary Parties finalized a settlement and voluntarily dismissed with prejudice all claims against each other.

In March 2017, appellant filed a notice of voluntary dismissal of all parties except Bertoloti.

In April 2017, Mogilevsky and Bertoloti filed an amended motion to enforce the CSA, arguing that the CSA required appellant to dismiss all parties, including Bertoloti, because the Mogilevsky Parties had finalized a settlement with a Secondary Party. Furthermore, they argued that Bertoloti was released from liability as a third party beneficiary of the CSA's general release of the Mogilevsky Parties and their employees, because the Third Amended Complaint alleged that Mogilevsky "employed Bertoloti as a secretary."

The trial court granted Bertoloti's motion to enforce and denied appellant's motion to enforce. The trial court ruled that Bertoloti was a third party beneficiary of the CSA, that the CSA required appellant to dismiss Bertoloti from the lawsuit with prejudice, that the required dismissal served as a release of all claims against Bertoloti, and that Bertoloti was given no additional consideration for her proposal for

3

settlement once appellant agreed to dismiss Bertoloti pursuant to the CSA. This appeal ensued.

Boiled down to its essence, the issue on appeal is whether the settlement agreement reached under the offer of judgment statute is enforceable even though, at the time appellant had accepted Bertoloti's proposal for settlement, appellant had already entered into a settlement agreement with other parties to the lawsuit that required the dismissal of Bertoloti upon the other parties' satisfaction of a contractual obligation.

"The standard of review in determining whether an offer of settlement comports with rule 1.442 and section 768.79 is de novo because a proposal for settlement is in the nature of a contract." *Brower-Eger v. Noon*, 994 So. 2d 1239, 1240–41 (Fla. 4th DCA 2008). Likewise, we review the interpretation of the settlement agreement de novo. *Patterson & Maloney v. Gumberg*, 828 So. 2d 403, 405 (Fla. 4th DCA 2002).

As a preliminary matter, we conclude that Bertoloti's proposal and appellant's acceptance complied with section 768.79, Florida Statutes, and Florida Rule of Civil Procedure 1.442, creating a settlement agreement tantamount to a consent judgment that the trial court had continuing jurisdiction to enforce under section 768.79(4). *See Mady v. DaimlerChrysler Corp.*, 59 So. 3d 1129, 1131, 1134 (Fla. 2011) (holding that a settlement reached under Florida's offer of judgment statute "is tantamount to a consent judgment" and represents a "judicially sanctioned change" in the parties' legal relationship).

Turning to the substance of the dispute, we conclude that nothing in the CSA renders the Renny-Bertoloti Settlement unenforceable.

First, we find that Bertoloti had not been released under paragraph 8 of the CSA at the time appellant accepted her proposal for settlement. Although appellant alleged in his complaint that Bertoloti was employed by Mogilevsky, "[a] complaint, as a pleading, is merely a tentative outline of the position which the pleader takes before his case is fully developed on the facts through discovery and evidence." *Paul v. Humana Med. Plan, Inc.*, 682 So. 2d 1119, 1123 (Fla. 4th DCA 1996). In this case, there is no record evidence that Bertoloti was an employee or agent of any of the Mogilevsky Parties.

In the litigation, Bertoloti signed an affidavit attesting that: (1) from May 2014 to January 2015, she was an employee doing secretarial work for Maxim Real Estate Holdings, LLC; and (2) from February 2015 to the present, she was working as an independent contractor doing secretarial

work for Ilia Capital, LLC. However, neither Maxim Real Estate Holdings, nor Ilia Capital, is listed in the CSA as a Mogilevsky Party. Thus, while Bertoloti may have been an employee or agent of either Maxim Real Estate Holdings or Ilia Capital, her affidavit indicates that she was not an employee or agent of a Mogilevsky Party.

Moreover, even assuming that Bertoloti was an employee or agent of a Mogilevsky Party, our reading of the CSA as a whole indicates that Bertoloti was not an intended third party beneficiary of the CSA. A party is an intended third party beneficiary of a contract "only if the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong." *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So. 2d 1028, 1031 (Fla. 4th DCA 1994).

Here, the very fact that the CSA does not mention Bertoloti at all—even though she was a party defendant to appellant's underlying lawsuit—indicates that the CSA was not intended to "primarily and directly" benefit Bertoloti. In fact, Bertoloti was not even identified as one of the Secondary Parties who "are or may be impacted" by the CSA. Furthermore, the parties to the CSA were barred from disclosing its existence to Bertoloti for a period of time, which further supports the conclusion that Bertoloti was not an intended third party beneficiary of the CSA. Had the CSA truly been intended to release Bertoloti immediately upon its execution, we believe it would have said so more explicitly.

Second, we find that the Renny-Bertoloti Settlement is not unenforceable merely because the CSA contained a provision requiring the dismissal of Bertoloti from the lawsuit in the event the Mogilevsky Parties entered into a settlement with either of the Secondary Parties.

The general rule is that a dismissal with prejudice "is equivalent to or tantamount to a release." *Eason v. Lau*, 369 So. 2d 600, 601 (Fla. 1st DCA 1978). However, although a voluntary dismissal with prejudice divests the trial court with jurisdiction to enforce a settlement agreement, the dismissal does not preclude a party from bringing a new breach of contract action to enforce the settlement agreement. *MCR Funding v. CMG Funding Corp.*, 771 So. 2d 32, 35 (Fla. 4th DCA 2000). Likewise, the doctrine of res judicata does not bar a party from filing a separate action to enforce a settlement agreement after litigation has been terminated by a voluntary dismissal with prejudice. *Oceanair of Fla., Inc. v. Beech Acceptance Corp.*, 545 So. 2d 443, 443 (Fla. 1st DCA 1989).

5

Here, we find that the dismissal provision in paragraph 3 of the CSA did not serve as a release of any claim appellant had against Bertoloti for breach of the Renny-Bertoloti Settlement. Paragraph 3 of the CSA required appellant to dismiss all claims he had "against all parties in the lawsuits with prejudice" in the event the Mogilevsky Parties entered into a settlement with either of the Secondary Parties. However, Bertoloti had not been dismissed from the lawsuit pursuant to the CSA prior to appellant accepting Bertoloti's proposal for settlement. Moreover, appellant's duty to dismiss Bertoloti from the lawsuit had not arisen under the CSA at the time appellant accepted Bertoloti's proposal for settlement, as the Mogilevsky Parties had not yet entered into a settlement with a Secondary Party.

Accordingly, we find that the dismissal provision in paragraph 3 of the CSA does not bar any claim appellant has against Bertoloti for breach of the Renny-Bertoloti Settlement, because: (1) appellant accepted the proposal for settlement before Bertoloti had been dismissed from the lawsuit and before appellant's duty to dismiss Bertoloti from the lawsuit had arisen under the CSA; and (2) a voluntary dismissal with prejudice does not constitute a release of a claim for breach of a settlement agreement concerning the underlying litigation.[1]

Third, we conclude that the Renny-Bertoloti Settlement was supported by consideration on the part of appellant. This conclusion is supported by the following reasons: (1) Bertoloti had not already been released or dismissed at the time appellant accepted her proposal for settlement; (2) any duty to dismiss Bertoloti from the lawsuit was not owed to Bertoloti under the CSA, but instead was owed to the Mogilevsky Parties; and (3) the Renny-Bertoloti Settlement provided a broader release than the general release in the CSA. *See Mangus v. Present,* 135 So. 2d 417, 419 (Fla. 1961) (consideration is present so long as there is any detriment to the promisee or benefit to the promisor); *Scherer v. Laborers' Int'l Union of N. Am.,* 746 F. Supp. 73, 83 (N.D. Fla. 1988) ("The performance of a pre-existing duty may be consideration if the duty is not owed to the promisor.").

In sum, we hold that the Renny-Bertoloti Settlement was enforceable as a consent judgment, that Bertoloti was not an intended third party

---

[1] Because a voluntary dismissal with prejudice does not preclude a subsequent action for breach of a settlement agreement concerning the underlying litigation, *see MCR Funding,* 771 So. 2d at 35, it necessarily follows that a voluntary dismissal with prejudice would not serve as release of any claim appellant has against Bertoloti for breach of the Renny-Bertoloti Settlement.

beneficiary of the CSA, that Bertoloti was not released by either the CSA or by a voluntary dismissal before appellant accepted her proposal for settlement, and that the CSA did not release any claim appellant had against Bertoloti for breach of the Renny-Bertoloti Settlement. We therefore reverse the orders on appeal and remand for further proceedings consistent with this opinion.

*Reversed and Remanded.*

WARNER and LEVINE, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**